UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-61338-SINGHAL/DAMIAN

JEFFREY TRONSEN,

    Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.
_____/

**REPORT & RECOMMENDATION ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT [ECF NOS. 22 AND 23]**

THIS CAUSE is before the Court on the parties' Cross-Motions for Summary Judgment, filed May 24, 2021 [ECF No. 22], and June 23, 2021 [ECF No. 23]. Plaintiff, Jeffrey Tronsen ("Plaintiff" or "Mr. Tronsen"), seeks reversal and remand of the Decision of the Administrative Law Judge ("ALJ") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), and Defendant, the Commissioner of Social Security, (the "Commissioner"), requests the Court affirm the ALJ's Decision. This matter was referred to the undersigned for a Report and Recommendation by the Honorable Raag Singhal, United States District Judge. [ECF No. 25]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has reviewed the parties' briefing [ECF Nos. 22, 23, 24], the administrative record [ECF No. 18], and all relevant authorities and is otherwise fully informed in the premises. For the reasons that follow, the undersigned recommends the Court deny Plaintiff's Motion for Summary Judgment [ECF No. 22], grant Defendant's Motion for Summary Judgment [ECF No. 23], and affirm the Decision of the ALJ.

## I. RELEVANT FACTUAL BACKGROUND

### A. *Mr. Tronsen's Claims For Benefits*

Mr. Tronsen alleges disability beginning on August 4, 2011, and was 44 years old on his alleged disability onset date, such that he fell within the definition of a "younger individual" (age 18-49) and subsequently changed age category to "closely approaching advanced age" (50-54). (R. 27-28, 240-249).[1] Mr. Tronsen has some college education and past work experience as a roofing supervisor, superintendent, and salesperson/sales agent. (R. 45, 57).

### B. *Relevant Medical Evidence And Expert Opinions Regarding Mr. Tronsen*

The issues raised by Mr. Tronsen in his Motion for Summary Judgment are limited in scope to arguments based on the ALJ's consideration of his mental impairments. Accordingly, below is a non-exhaustive summary of the relevant medical evidence in the record regarding Mr. Tronsen's mental impairments.

On August 29, 2014, Lisa Rabinowitz, Psy.D., conducted a psychological evaluation of Mr. Tronsen. (R. 471). Dr. Rabinowitz reported that Mr. Tronsen was taking no psychotropic medications, communicated without difficulty, his attention and concentration were intact, he displayed adequate eye contact, and he was cooperative. (R. 471-73). Dr. Rabinowitz also observed that Mr. Tronsen arrived 15 minutes early to his appointment and was unaccompanied. (R. 471).

---

[1] All references to "R." refer to the transcript of the Social Security Administration filed on February 12, 2021. [ECF No. 18]. The page numbers listed in this document refer to the bold numbers found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the Court's electronic docketing system or any other page numbers.

After suffering a stroke in January 2018, Mr. Tronsen was evaluated by neurologist David Ross, M.D., on May 14, 2018. (R. 680). Dr. Ross found that Mr. Tronsen's attention was normal, and his memory and intellect were intact. (R. 681).

On August 17, 2018, Mr. Tronsen was seen for a psychiatric evaluation by Saiqa Ismail, M.D., who reported that Mr. Tronsen's social judgment and concentration were mildly impaired, his intellect was average, and his insight was fair. (R. 698). Dr. Ismail also noted Mr. Tronsen's goal-directed thought process and unremarkable thought content. (R. 698). At a follow-up in November 2018, Dr. Ismail noted that Mr. Tronsen reported non-compliance with the prescribed medication. (R. 888). Nevertheless, Dr. Ismail indicated Mr. Tronsen's mental status evaluation revealed essentially stable findings. (R. 888).

State agency psychological consultants, Drs. Sharon Ames-Dennard and Keith Bauer, both conducted mental residual functional capacity ("RCF") assessments of Mr. Tronsen. (R. 90-92, 128-29). Dr. Ames-Dennard opined that Mr. Tronsen has the capacity to understand and recall simple instructions, can concentrate and persist during completion of work-related tasks, would likely work best in a setting requiring limited social engagement, and may experience some difficulty responding to abrupt change. (R. 91-92). However, according to Dr. Ames-Dennard, no substantial deficits in adaptation capacities were evident. (R. 91-92). Dr. Bauer opined that Mr. Tronsen can understand and recall moderately complex instructions, can persist at simple and routine tasks for a regular workday at an appropriate pace over an extended period of time, would work best in an environment with limited contact with the public, and can adapt to most changes and tasks without significant difficulty. (R. 128-29).

...

## II. PROCEDURAL BACKGROUND

On February 15, 2018, Mr. Tronsen applied for DIB and SSI benefits.[2] (R. 240-49). His applications were initially denied on August 31, 2018, and again, upon reconsideration, on October 4, 2018. (R. 76, 94, 112, 131), Mr. Tronsen then requested a hearing, which was held before an ALJ on July 12, 2019. (R. 38). On August 13, 2019, the ALJ issued the Decision finding that Mr. Tronsen has not been under a disability under Sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act (the "Act") since August 4, 2011, the alleged disability onset date, through the date of the Decision. (R. 29). Mr. Tronsen then requested review of the ALJ's Decision, and on May 6, 2020, the Appeals Council denied his request for review, rendering the ALJ's Decision the Commissioner's "final" decision. (R. 6). *See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Having exhausted his administrative remedies, on July 2, 2020, Mr. Tronsen filed the instant action seeking review of the ALJ's Decision. [ECF No. 1]. *See* 42 U.S.C. § 405(g). Thereafter, Mr. Tronsen filed his Motion for Summary Judgment on May 24, 2021. [ECF No. 22]. Defendant, the Commissioner of the SSA ("Defendant" or the "Commissioner"), filed a Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment on June 23, 2021. [ECF No. 23]. Mr. Tronsen did not file a reply.

Both parties' motions are ripe for adjudication.

---

[2] Although Mr. Tronsen applied for both SSI and DIB benefits, Mr. Tronsen waived appeal of his DIB claim. *See* Mot. at 2 n.2. However, Mr. Tronsen claims he never formally withdrew his DIB claim, and, therefore, the ALJ's decision determined both his SSI and DIB claims. *Id*. Nevertheless, Mr. Tronsen states references to the Title II claim are made "for the purpose of providing an accurate record" and that "the primary arguments" in the Motion are directed to the period at issue in the SSI claim (February 15, 2018-August 13, 2019). It is of no matter whether the DIB claim was actually waived as the analyses of the DIB claim and the SSI claim are the same.

### III.     THE SEQUENTIAL EVALUATION PROCESS

Eligibility for DIB and SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1328c(a)(1)-(3). A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C §§ 423(d)(1)(A), 1382c(a)(3)(A); *Bacon v. Comm'r of Soc. Sec.*, 861 F. App'x 315, 317 (11th Cir. 2021). A plaintiff bears the burden of proving he is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1512(a), (c), 416.912(a), (c).

The ALJ must determine whether a claimant is disabled under Sections 216(i), 223(d), or 1614(a)(3)(A) of the Act by applying the five-step sequential evaluation process. (R. 29). *See* 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1); *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

At step one of this process, the ALJ must determine whether the claimant is unable to engage in substantial gainful activity ("SGA"). *Id*. SGA is defined as work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. Generally, if a claimant's labor earnings are above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 C.F.R. §§ 404.1574-75, 416.974-5. If a claimant can engage in SGA, the ALJ will find that he is not disabled for that period of time. 20 C.F.R. §§ 404.1571, 416.971.

At step two, the ALJ must determine whether the claimant has a severe medically determinable mental or physical impairment ("MDI") or a combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is severe if it significantly limits an individual's ability to perform basic work activities. *Id*. If the

5

claimant does not have an MDI or combination of impairments that is severe, he is not considered disabled. *Id*.

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity that meets or medically equals the criteria of an impairment listed in Appendix 1 to Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d), 404.1525-26; *see also* §§ 416.920(d), 416.925-26. If so, the claimant is disabled. *Id*. If not, the analysis proceeds to the next step. *Id*. Before considering step four, however, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ must make this determination while stating "with particularity the weight given to different medical opinions and the reasons therefor." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)).

At step four, the ALJ must determine whether the claimant can perform his past relevant work, in light of his RFC. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed (either in the manner claimant actually performed it or as it is generally performed in the national economy) within 15 years prior to the date claimant's disability must be established. 20 C.F.R. §§ 404.1560, 416.960. If the claimant has the RFC to do his past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is unable to do any of his past relevant work, the analysis proceeds to the final step.

At the fifth and final step, the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. §§

404.1520(g), 416.920(g). If the claimant can do other work, he is not disabled. *Id*. If he is unable to do other work, he is disabled. *Id*. At step five, the burden temporarily shifts to the Commissioner to show the existence of other jobs in the national economy that exist in significant numbers that the claimant can perform, given his impairments. 20 C.F.R. §§ 404.1512, 404.1560(c), 416.912, and 416.960(c). The ALJ makes this determination by considering both the Dictionary of Occupational Titles ("DOT") and testimony from an impartial Vocational Expert ("VE"). *See Buckwalter*, 5 F.4th at 1321.

## IV. THE ALJ's DECISION

Applying the foregoing sequential evaluation process to Mr. Tronsen's claim for benefits, the ALJ found at step one that Mr. Tronsen has not engaged in substantial gainful activity since August 4, 2011, the alleged onset date, and, at step two, that Mr. Tronsen had severe impairments of "status post cerebrovascular accident, recurrent arrhythmias, obesity, and depression/bipolar disorder." (R. 17-19).

At step three of the sequential evaluation process, the ALJ determined that the severity of Mr. Tronsen's impairments does not meet or medically equal the severity of one of the listed impairments. (R. 20). Relevant to the issues raised by Mr. Tronsen here, the ALJ concluded that Mr. Tronsen's mental impairments do not meet or medically equal the criteria of listing 12.04 (depressive, bipolar, and related disorders). (R. 20). In making this finding, the ALJ considered whether the "paragraph B" criteria were satisfied. (R. 20-21). To satisfy the paragraph B criteria, a claimant's mental impairments must result in at least one extreme or two marked limitations in the following broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves. 40 C.F.R. Part 404, Subpart P,

Appendix 1, Rule 12.00. Here, the ALJ found that Mr. Tronsen had mild limitations in understanding, remembering, or applying information and in adapting or managing oneself. (R. 21). The ALJ further found that Mr. Tronsen had moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace. (R. 21). The ALJ did not, however, find marked limitations in these broad areas of functioning.

The limitations identified in the paragraph B criteria are used to rate the severity of mental impairments at step three of the sequential evaluation process and are not part of a claimant's RFC, which requires a more detailed assessment. Social Security Ruling (SSR) 96-8p, 1996 WL 374184 at *4.

Before proceeding to step four, the ALJ assessed Mr. Tronsen's RFC and found that Mr. Tronsen can perform light work with some limitations:

> After careful consideration of the entire record, the undersigned finds the claimant has the residual function capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs. He can never climb ladders, ropes, and scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He must avoid concentrated exposure to extreme heat, vibrations, and hazards. He can concentrate and persist to complete simple and routine tasks in two-hour segments over an eight-hour day. He can tolerate occasional interaction with the public.

(R. 22).

At step four of the sequential evaluation process, the ALJ found that Mr. Tronsen is unable to perform any of his past relevant work. (R. 27). In concluding that Mr. Tronsen could not perform his past relevant work, the ALJ relied on testimony from the VE that a hypothetical individual with Mr. Tronsen's age, education, work experience, and RFC could not perform any of his past relevant work. (R. 27).

At step five, the ALJ, having found that Mr. Tronsen's ability to do light work has been impeded by additional limitations, asked the VE whether jobs exist in significant

numbers in the national economy that a hypothetical person with Mr. Tronsen's limitations and RFC could perform. (R. 28, 58). The VE testified that a person with Mr. Tronsen's RFC could work as an order caller, marker, and mail clerk. (R. 28, 58). Based on the VE's testimony, the ALJ concluded that Mr. Tronsen is capable of making a successful adjustment to other work that exists in significant numbers in the national economy and, therefore, found that he is not disabled. (R. 29).

## V. APPLICABLE STANDARDS FOR REVIEW OF THE ALJ'S DECISION[3]

The Court's review of the ALJ's Decision is limited to determining whether it is supported by substantial evidence and whether the correct legal standards were applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). Substantial evidence is more than a scintilla but less than a preponderance. *Id*. (citations omitted); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion. *Buckwalter*, 5 F.4th at 1320. A court must defer to the ALJ's decision if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it. *Id*. A court may not redecide facts, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id*. Although factual findings enjoy such deference, the ALJ's legal analysis and conclusions are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

---

[3] The standard of review in SSI cases is the same as the standard for DIB cases. 42 U.S.C. § 1383(c)(3). Consequently, the case law addressing DIB cases is generally applicable to SSI cases.

## VI.     ISSUES RAISED IN THE PARTIES' MOTIONS

In his Motion for Summary Judgment, Mr. Tronsen argues that the ALJ's RFC assessment is not based on all relevant evidence in the record. Mot. at 6-8. Specifically, Mr. Tronsen argues that the ALJ's RFC assessment is deficient because it does not incorporate the State agency psychologists' opinions that Mr. Tronsen was "moderately limited" in several areas and does not include any limitations corresponding to the ALJ's psychiatric review technique ("PRT") finding that Mr. Tronsen had "moderate" limitations in his ability to concentrate, persist, or maintain pace and in his ability to interact with others. *Id.* at 6. It follows, according to Mr. Tronsen, that the ALJ also failed to incorporate these limitations into the hypothetical posed to the VE. *Id.* at 5-6. As such, Mr. Tronsen also argues that the VE's testimony does not constitute substantial evidence upon which the ALJ could properly rely in denying Mr. Tronsen's claim. *Id.* at 6-8. Mr. Tronsen argues that these issues warrant reversal of the ALJ's Decision or, alternatively, remand with instructions for the ALJ to properly assess his RFC and pose a hypothetical to the VE that incorporates these findings. *Id.* at 9.

The Commissioner responds, in her Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment, that an ALJ's finding that a prior administrative medical finding is persuasive (in this case, the State agency psychologists' opinions) does not mandate that the ALJ adopt every limitation the source indicated. Resp. at 10-11. Nevertheless, the Commissioner argues that the ALJ's RFC findings sufficiently reflect the relevant information, including the specific limitations the State agency psychologists endorsed. *Id.* at 10. Moreover, the Commissioner argues that remand is not warranted

because Mr. Tronsen has failed to show how the limitations endorsed by the State psychologists would make him unable to perform the jobs identified by the VE. *Id.*

The Commissioner also argues that the ALJ's Decision should be affirmed because PRT ratings (*i.e.*, the ALJ's finding that Mr. Tronsen had moderate limitations in the area of concentrating, persisting, or maintaining pace and the area of interacting with others) are not part of an ALJ's RFC assessment, but, rather, are used to rate the severity of a claimant's mental impairments at steps two and three of the sequential evaluation process. Resp. at 6. And the Commissioner argues that the ALJ's RFC assessment sufficiently accounts for the PRT ratings because the record, as discussed by the ALJ, supports the ALJ's assessment of Plaintiff's mental limitations. *Id.*

## VII. DISCUSSION

### A. *Whether the ALJ's RFC Is Based On All Relevant Evidence.*

Mr. Tronsen argues that in assessing Mr. Tronsen's RFC, the ALJ erred when she limited Mr. Tronsen's mental limitations to his ability to "concentrate and persist to complete simple and routine tasks in two-hour segments over an eight-hour day" and "tolerate occasional interaction with the public." *See* Mot. at 6. Specifically, Mr. Tronsen argues that the ALJ's RFC assessment failed to incorporate the State agency psychologists' opinions that Mr. Tronsen was "moderately limited" in several areas, despite the ALJ finding that the psychologists' opinions were persuasive. *Id.* Mr. Tronsen also argues that the ALJ failed to consider her own PRT ratings of Mr. Tronsen's mental impairments. *Id.* Thus, Mr. Tronsen argues the ALJ's RFC is not based on all relevant evidence.

### *1. The ALJ's Consideration of The State Agency Psychologists' Opinions.*

With regard to his claim that the ALJ failed to consider the State agency psychologists' opinions in assessing his RFC, Mr. Tronsen relies on the summary conclusions section of Drs. Ames-Dennard and Bauer's mental RFC assessments in which the psychologists rate Mr. Tronsen's limitations. (R. 90-92, 128-30). In the summary conclusion section of the assessment, State agency psychologist Dr. Ames-Dennard rated Mr. Tronsen as moderately limited in the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to interact appropriately with the general public, and the ability to respond appropriately to changes in the work setting. (R. 91-92). Dr. Bauer, the other State agency psychologist, also rated Mr. Tronsen as moderately limited in the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to interact appropriately with the general public. (R. 128-29).

However, as the Commissioner points out in its Response, the agency's Program Operations Manual System (POMS) clarifies that the summary conclusions are "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." POMS DI § 24510.060(B)(2), 2001 WL 1933367. Thus, a rating of moderately limited in the summary conclusion section of these reports does not indicate the degree and extent of any limitations. Rather, the agency's POMS requires State agency consultants, like Drs. Ames-Dennard and Baur here, to detail their RFC assessment in narrative form after completing the worksheet. *Id*. *See also* POMS DI § 24510.063(B)(2), 2001 WL 1933370; *Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49 (11th Cir. 2012). The evaluation forms themselves also clarify that the

summary conclusion section helps determine the individual's ability to perform sustained work activities but that "the actual mental residual functional capacity assessment is recorded in the narrative discussion, which describes how the evidence supports each conclusion." (R. 90, 128).

In the narrative discussion of Mr. Tronsen's sustained concentration and persistence capacities and limitations, which is part of the actual mental RFC assessment, Dr. Ames-Dennard states that Mr. Tronsen has the "capacity to attend/conc/persist during completion of work related tasks." (R. 91). Regarding Mr. Tronsen's social interaction limitations, Dr. Ames-Dennard opines that Mr. Tronsen would probably function best in a setting requiring limited social engagement. (R. 92). And despite marking that Mr. Tronsen is "moderately limited" in his ability to respond appropriately to changes in the work setting, Dr. Ames-Dennard concludes that no substantial deficits are evident in Mr. Tronsen's adaptation capacities. (R. 92).

Similarly, in the narrative discussion section of his report, Dr. Bauer indicates that Mr. Tronsen can "persist at simple and routine tasks for a regular workday at an appropriate pace and can sustain this level over an extended period of time." (R. 128-29). Regarding Mr. Tronsen's social interaction limitations, Dr. Bauer concludes that Mr. Tronsen "would work best in an environment in which he had limited contact with the public." (R. 129).

Review of the ALJ's Decision reflects that the State agency psychologists did not assess greater or more significant limitations than those reflected in the ALJ's RFC assessment. Therefore, the undersigned finds that Mr. Tronsen has not demonstrated that the ALJ's Decision failed to incorporate all relevant limitations found by the State agency psychologists,

but, instead, that the ALJ's Decision is supported by and consistent with the evidence, including the State agency psychologists' reports.

### 2. *The ALJ's Consideration Of Her Paragraph B Criteria Limitations.*

Mr. Tronsen also argues that the ALJ's RFC assessment is deficient because the mental limitations in the RFC assessment that Mr. Tronsen can "concentrate and persist to complete simple and routine tasks in two-hour segments over an eight-hour day" and "can tolerate occasional interaction with the public" does not adequately address the moderate limitations in concentrating, persisting, or maintaining pace and in interacting with others found in the ALJ's PRT analysis. Mot. at 7. As the Commissioner points out in the Response, an ALJ's PRT ratings are not an assessment of the claimant's RFC but, instead, are used to rate the severity of a claimant's mental impairment for purposes of steps two and three of the sequential evaluation process. Resp. at 6.

The record reflects that the ALJ considered the medical evidence regarding all of Mr. Tronsen's limitations before finding that he could "complete simple and routine tasks in two-hour segments over an eight-hour day" and "can tolerate occasional interaction with the public." (R. 22). As stated above in Section I, on August 29, 2014, Dr. Rabinowitz reported in her psychiatric evaluation of Mr. Tronsen that he communicated without difficulty and that his attention and concentration were intact. (R. 473). On May 14, 2018, Dr. Ross reported that Mr. Tronsen's attention was normal. (R. 681). On August 17, 2018, Dr. Ismail noted that Mr. Tronsen's concentration was mildly impaired, and a follow-up mental status evaluation in November 2018 revealed essentially stable findings. (R. 698, 888).

Furthermore, as stated above, State agency psychologist Dr. Ames-Dennard opined that Mr. Tronsen has the capacity to concentrate during completion of work-related tasks and

had no substantial deficits in his adaptation capacities. (R. 91-92). Dr. Ames-Dennard further opined that Mr. Tronsen would work best in a setting requiring limited social engagement and can recall simple instructions. (R. 91-92). And State agency psychologist Dr. Bauer opined that Mr. Tronsen "can understand and recall moderately complex instructions," "can persist at simple and routine tasks for a regular workday at an appropriate pace and can sustain this level over an extended period of time," and "would work best in an environment in which he had limited contact with the public." (R. 128-29).

The ALJ noted all of these evaluations and their findings regarding Mr. Tronsen's limitations in her Decision and indicated that the record includes no further psychiatric treatment. (R. 24-25). Mr. Tronsen does not argue that there are other psychiatric evaluations in the record that the ALJ failed to consider in the Decision. The ALJ then made an independent determination that Mr. Tronsen retained the ability to "complete simple and routine tasks in two-hour segments over an eight-hour day" and "can tolerate occasional interaction with the public." (R. 22). The ALJ's determination is supported by and consistent with the evidence in the record, as discussed above.

Therefore, the undersigned finds that Mr. Tronsen has not demonstrated that the ALJ failed to incorporate all of Mr. Tronsen's limitations into her RFC assessment. It is this Court's role to determine whether the ALJ's Decision, here, particularly, the ALJ's RFC assessment, is supported by substantial evidence and not to reweigh the evidence. *See Buckwalter*, 5 F.4th at 1320. For the reasons set out above, the undersigned finds that ALJ's RFC assessment is supported by substantial evidence

**B.**     *Whether the VE's Testimony Constitutes Substantial Evidence.*

Mr. Tronsen also argues that the ALJ failed to incorporate all of Mr. Tronsen's limitations, including Mr. Tronsen's moderate limitation in concentrating, persisting, and maintaining pace from the ALJ's PRT analysis, in the hypothetical posed to the VE. Mot. at 5-6. As such, Mr. Tronsen argues that the VE's testimony was based on a deficient hypothetical and does not constitute substantial evidence upon which the ALJ could rely. *Id*.

In support of this argument, Mr. Tronsen relies on the Eleventh Circuit decision in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176 (11th Cir. 2011). In *Winschel*, the Eleventh Circuit addressed the issue of whether a hypothetical question to a VE must specifically account for a moderate limitation in concentration, persistence, and pace identified during the ALJ's PRT analysis. *Id*. at 1180. The Eleventh Circuit noted that other circuits have rejected the argument that an ALJ generally accounts for a claimant's limitation in concentration, persistence, and pace by restricting the hypothetical question to "simple, routine tasks or unskilled work." *Id*. However, the court pointed out that restricting a hypothetical to "simple, routine tasks or unskilled work" sufficiently accounts for a limitation in concentration, persistence, and pace "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace" or when the hypothetical "otherwise implicitly account[s] for these limitations." *Id*. (alteration added).

In *Winschel*, the Eleventh Circuit found that "the ALJ did not indicate that medical evidence suggested [the claimant's] ability to work was unaffected by [the claimant's] limitation, nor did [the ALJ] otherwise account for the limitation in his hypothetical question posed to the vocational expert." *Id*. at 1181. Because the ALJ failed to otherwise account for

the claimant's limitation in concentration, persistence and pace, the Eleventh Circuit held that "the ALJ should have explicitly included the limitation in his hypothetical question to the vocational expert." *Id*. The ALJ failed to do so, and, therefore, the Eleventh Circuit remanded the case with instructions that the ALJ pose a hypothetical to the VE that specifically accounts for the claimant's moderate limitation in maintaining concentration, persistence, and pace. *Id*.

Unlike the ALJ in *Winschel*, the ALJ here did not simply assume that Mr. Tronsen could perform simple and routine tasks and occasionally tolerate interaction with the public when she posed the hypothetical question to the VE. Rather, as discussed above, the ALJ's Decision reflects that the ALJ examined Mr. Tronsen's medical records and made an independent finding regarding the extent to which Mr. Tronsen's ability to work was affected by all his impairments. Thus, the record, including the ALJ's Decision, reflects that the ALJ properly considered and accounted for all of Mr. Tronsen's limitations in the hypothetical posed to the VE. *See Szilvasi v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 898, 902 (11th Cir. 2014) (holding that the ALJ adequately accounted for all of the claimant's impairments in the hypothetical posed to the VE because the ALJ clearly considered the medical evidence regarding all of the claimant's limitations before finding that he could complete simple routine tasks).

As such, Mr. Tronsen has failed to show that the VE's testimony is not substantial evidence on which the ALJ could properly rely.

## VIII.  CONCLUSION AND RECOMMENDATION

For the reasons set forth above and based on the record before this Court, the undersigned finds that Mr. Tronsen has failed to demonstrate that the ALJ's Decision was not supported by substantial evidence.

Accordingly, the undersigned respectfully recommends that the Court **DENY** Plaintiff's Motion for Summary Judgment [ECF No. 22], **GRANT** Defendant's Motion for Summary Judgment [ECF No. 23], and **AFFIRM** the Decision of the Commissioner.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Raag Singhal, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 16th day of February 2023.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
Hon. Raag Singhal, *U.S. District Judge*
Counsel of Record